Mark A Kriegel (mkriegel@kriegellaw.com)
**LAW OFFICES OF MARK A. KRIEGEL, LLC**
1479 Pennington Road
Ewing, NJ 08618
Tel: 609.883.5133

Stephen M. Lobbin (sml@smlavvocati.com)
Joshua N. Osborn (jno@smlavvocati.com)
Austin J. Richardson (ajr@smlavvocati.com)
**SML AVVOCATI P.C.**
888 Prospect Street, Suite 200
San Diego, CA 92037
Tel. 949.636.1391
*Pro Hac Vice* Pending

*Attorneys for Defendant EONSMOKE, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUUL LABS, INC., <br><br> Plaintiff, <br><br> v. <br><br> EONSMOKE, LLC, ZLAB S.A., ZIIP LAB CO., and SHENZHEN YIBO TECHNOLOGY CO., LTD., <br><br> Defendants. | Civil Action No. 19-8405 (JMV) (MF) <br><br> **DEFENDANT EONSMOKE'S RESPONSE TO PLAINTIFF'S APPLICATION FOR TRO** |

Defendant Eonsmoke, LLC ("Eonsmoke") responds hereby to the Application for TRO filed in this action by Plaintiff Juul Labs, Inc.

1

## Introduction and Summary of Response

In its recent March 13, 2019 Order following a telephone conference with all parties (*see* D.E. 16), this Court denied Plaintiff's TRO Application but for the single "design patent infringement claim against Eonsmoke, LLC."[1] For that claim, Plaintiff asserts—in only a single paragraph of discussion—that "a cursory visual comparison confirms that the overall design of the [Eonsmoke] accused products is substantially the same as the overall design of the D'536 patent." However, not only does Plaintiff ignore several required steps of the necessary legal analysis for design patent infringement (which alone should compel denying any TRO), but the proper conclusion from even Plaintiff's "cursory visual comparison" is the opposite. That is, the easily-identified design differences between the asserted D'536 patent claim and the accused Eonsmoke products demonstrate non-infringement, or at the very least, they demonstrate that any final conclusion of infringement at trial is ***unlikely***.

Moreover, each of Plaintiff's contentions on irreparable harm, balance of equities, and public interest falls well short of the very high burden required for preliminary relief, particularly the extreme remedy of a TRO. As is apparent from its arguments, Plaintiff's contentions on these required findings depends not on its design patent claim but on a favorable outcome of its unfair competition claim—which this Court already has rejected as a basis for any TRO. As such, even a favorable assessment of the design patent claim

---

[1] The Court denied the TRO request in its entirety as to Plaintiff's unfair competition claim. Moreover, Plaintiff concedes in its motion that it "is not pursuing all of the claims in its complaint, but rather just one design patent that issued just last week;" that is, U.S. Patent No. D842,536 ("the D'536 patent"). *See* D.E. 8 at 2, 5.

2

could not support the necessary irreparable harm, balance of equities, and public interest required for a TRO, which should be denied for each of those reasons as well. Finally, ***Plaintiff's unexplained delay*** of eight days—from the March 5, 2019 issuance of the D'536 patent to its March 13, 2019 filing of its motion—alone compels denying the extreme relief of a TRO.[2]

### Legal Standard

As this Court has cautioned, "Preliminary injunctive relief is an extraordinary remedy, which should be granted only in limited circumstances." *Cochlear Ltd. v. Oticon Med. AB*, No. 18-6684, 2018 WL 5307822, at *1 (D.N.J. Oct. 26, 2018) (citing *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014)). The required factors are (1) likelihood of success on the merits, (2) irreparable harm, (3) a favorable balance of equities, and (4) that an injunction is in the public interest. *See id*. "The failure to establish any of the four elements renders a preliminary injunction inappropriate." *Id*. Here, Plaintiff's request is inadequately supported on each of these four required factors.

---

[2] No explanation for the delay could suffice anyway, because actually Plaintiff knew for 20 days prior that the D'536 patent would issue on March 5, 2019. *See* Ex. A (February 13, 2019 Issue Notification). At the very least, Plaintiff could have filed its motion that same day. Plaintiff not only fails to disclose that it (a) knew the D'536 patent would issue long before it did, and (b) knew the exact date the issuance would occur, but Plaintiff attempts to mislead by stating that "just last week" the patent suddenly materialized. *See* D.E. 8 at 5. In fact, Plaintiff had 20 days before the March 5, 2019 issue date to prepare and file its motion, but Plaintiff decided instead to wait another 8 days. Surely Plaintiff similarly could wait another 9 days from now until this Court's scheduled March 29, 2019 hearing on the preliminary injunction motion.

## **Plaintiff Fails to Show Any Likely Success on the Merits**

The entirety of Plaintiff's analysis of design patent infringement (*see* D.E. 8 at 14-15) consists only of (a) citation to *Egyptian Goddess* and a few other cases, plus (b) the following single sentence summarizing—admittedly—only a "cursory visual comparison" of the patent drawing and the accused products: "The accused [Eonsmoke] pods are virtually identical to the claimed design, including the overall shape, relative proportions, distinctive transparent chamber on one half, opaque portion on the other, a tube running through the middle of the chamber, and a notch where the two halves meet." *Id.* at 15 (citing Alarcon Decl. ¶¶ 52-70). Not only is Plaintiff's thin infringement analysis flawed in substance, but Plaintiff has ignored several required steps in the required analysis altogether.

As *Egyptian Goddess* holds, there are "a number of other issues that bear on the scope of the claim" of a design patent, to be completed **before** engaging in any "cursory visual comparison" as Plaintiff solely addresses. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008). These "other issues" include (a) "assessing and describing the effect of any representations that may have been made in the course of the **prosecution history**," (b) "distinguishing between those features of the claimed design that are ornamental and **those that are purely functional**," and (c) assessing "whether an ordinary observer, **familiar with the prior art** . . . , would be deceived into believing the [accused infringing design] is the same as the patented [design]." *Id.* at 680-81 (emphasis added). Because Plaintiff has not assessed any of these issues in its "cursory" argument, as a procedural matter (including due process) neither Eonsmoke nor this Court could

properly assess all of the necessary issues of prosecution history, functionality, prior art, claim scope, alleged infringement, and likelihood of success on the merits. For example, Plaintiff has not discussed the prosecution history, has not discussed the important constraints of the prior art,[3] and has not removed from its analysis the numerous "functional" elements of the claimed design.[4]

Particularly concerning functionality, the Federal Circuit has emphasized repeatedly that "the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997); *see also Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016) ("[T]he scope of a design patent claim must be limited to the ornamental aspects of the design.") (citing *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015)). Indeed, by statute, design patents are limited in scope to "new, original **and ornamental**" designs for an article of manufacture. 35 U.S.C. § 171(a) (emphasis added). Here, an understanding of

---

[3] The D'536 patent alone cites **well over 1,000** different prior art references, which must be considered in any consideration of infringement. There is even more non-cited prior art, of course, some examples of which Eonsmoke has located in just the few days preparing this response. *See* Ex. B.

[4] Not only has Plaintiff failed to address in its brief all of the required steps in the proper analysis, but the cited Alarcon Declaration fails to cure the deficiencies. *See* D.E. 9 at 21-26. Moreover, as a matter of due process and fairness—especially given the short time frame of Plaintiff's TRO request—Eonsmoke should not be required to scour Plaintiff's many hundreds of pages of declarations and exhibits to respond to points and arguments never mentioned in Plaintiff's brief.

these "pods" or "cartridges" at issue, and how they function, compels the conclusion that nearly all of the features of the asserted design are functional, not ornamental at all.

For example, the overall shape of the cartridge is dictated by the device (including the battery) it must connect to. The end of the transparent chamber has a tapered end and indents on the side of the chamber so it can connect to protrusions within the device. Even the edge of the mouthpiece is dictated by the battery it must connect to, because an incompatible edge would prevent it from being usable. The shape and position of the center tube also is dictated by its function, because it exists to provide a pathway for heated vapor to move from the heating element to the opposing end. A cylindrical chamber offers the greatest volume-to-surface area ratio, allowing the greatest amount of vapor to pass through while using the least amount of material.

Plaintiff provides no analysis of functionality considerations. Its singular focus is the shape of the "notch." *See* D.E. 8 at 15. But even Plaintiff's own images show clear and important (and non-infringing) distinctions concerning "notch" shape. For example, whereas the design patent shows a wide, trapezoidal notch shape, the "Eonsmoke" design shows a distinctive, narrow and deep U-shape, while the "4X" design shows a distinctive, narrow and deep V-shape.[5] *See id*. Therefore, even the insufficient but quick visual comparison confirms that non-infringement (rather than infringement) is the likely outcome on the merits of Plaintiff's design patent claim.

---

[5] Only the Eonsmoke pods—not the Ziip pods—remain at issue on the TRO request. *See* D.E. 16 at 1 ("ORDERED that Plaintiffs request for temporary restraints as to Defendants ZLAB S.A.; ZIIP Lab Co., Ltd.; and Shenzhen Yibo Technology Co., Ltd. is DENIED.").

## There Is No Risk of "Irreparable" Harm

On the required showing of "irreparable harm," Plaintiff contends that "price erosion, loss of goodwill, damage to reputation, and loss of business opportunities" would result from the alleged design patent infringement. *See* D.E. 8 at 20 (admitting that irreparable harm resulting from patent infringement "requires proof that a causal nexus relates the alleged harm to the alleged infringement.") (internal citation omitted); *see Cochlear*, 2018 WL 5307822, at *8 (irreparable harm requires that "a sufficiently strong causal nexus relates the alleged harm to the alleged infringement," and "[m]ere speculation may not suffice") (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012)). But the only alleged, cognizable design patent infringement relates to the shape of the "notch" in the claimed design, which is so insignificant that it could not cause any harm at all, much less irreparable harm.

Even Plaintiff's assertions of a "superior design" relate to Plaintiff's overall system, not the particular shape of the "notch" in the pod or cartridge. *See* D.E. 8 at 20 (asserting that its "designs have been consistently praised," users "appreciate the flat rectangular product design [and] discreet size," the device is "beautiful" and "far sleeker and better than [the] average gigantic multi-piece vape," and the system is "beautifully designed" and "definitely unique"). The main product in this system is the vaporizing device itself, which functions only when paired with a replaceable pod. The shape of the pod's "notch" is irrelevant and immaterial to any market success of the overall system.

## **The Balance of Equities Favors Denial of Any TRO**

On the equities, Plaintiff asserts that its (assumed) harm "far outweighs any potential harm to [Eonsmoke]." *Id.* But Plaintiff's analysis bears no relation to the claimed "notch" shape of the design patent; rather, Plaintiff cites only to much broader considerations relating to the already-rejected claim of unfair competition. *See id.* (citing Plaintiff's time and monetary investments, "the quality of its products" and "creat[ing] a sustainable market for e-cigarettes," without mention of any significance of the claimed trapezoidal notch design). Therefore, notwithstanding demonstrable non-infringement, Plaintiff's hyperbole about "free-riding on [Plaintiff's] efforts and goodwill" is inapposite as proof of the equities vis-à-vis the particular, narrowly-focused design patent infringement claim.[6]

## **The Public Has No Interest In An Incorrect TRO**

The public has a preeminent interest in having this Court make a proper assessment of the scope of Plaintiff's design patent, its infringement claim, and any irreparable harm—***in the next nine days***—if no TRO issues. Plaintiff's cited "public interest"—"protect[ing] minors from . . . dangerous products," "reducing underage use of

---

[6] Plaintiff's counsel should know better than to put forth the oft-cited quote from the *Windsurfing International* case from 1986, which was made in the context of a ***permanent***—not preliminary—injunction. The distinction is important, because at the permanent injunction stage, infringement already has been proven. *See Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 684 (Fed. Cir. 1990) ("The quote is surprising, for the injunction under consideration in *Windsurfing* was a ***permanent*** injunction, to be issued ***after trial***. Thus, nothing in *Windsurfing* is remotely related to a potential destruction of Grip-Pak ***without*** its day in court.") (emphasis in original). The poignant harm to Eonsmoke of a TRO or ***preliminary*** injunction would be existential, which certainly outweighs the non-monetary harm to Plaintiff, if any.

tobacco and e-cigarette products," and "protecting access by adult smokers to regulated and high quality alternatives to combustible cigarettes"—are irrelevant to the TRO request, particularly as it has been narrowed sharply by this Court to include only the design patent infringement claim, not any alleged unfair competition.

## Conclusion

For each of the foregoing reasons, Defendant Eonsmoke respectfully requests a prompt denial of Plaintiff's TRO request.

Respectfully submitted,

LAW OFFICES OF MARK A. KRIEGEL, LLC

/s/ Mark A. Kriegel
1479 Pennington Road
Ewing, NJ 08618
Tel: 609.883.5133
Email: mkriegel@kriegellaw.com

SML AVVOCATI P.C.

/s/ Stephen M. Lobbin
888 Prospect Street Suite 200
San Diego, CA 92037
Tel. 949.636.1391
Email: sml@smlavvocati.com
*Pro Hac Vice Pending*

*Attorneys for Defendant EONSMOKE, LLC*

Dated: March 18, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2019, I electronically filed the above document(s) with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.

<em>/s/ Mark A. Kriegel</em>