Mark A Kriegel (mkriegel@kriegellaw.com)
**LAW OFFICES OF MARK A. KRIEGEL, LLC**
1479 Pennington Road
Ewing, NJ 08618
Tel: 609.883.5133

Stephen M. Lobbin (sml@smlavvocati.com)
Joshua N. Osborn (jno@smlavvocati.com)
Austin J. Richardson (ajr@smlavvocati.com)
**SML AVVOCATI P.C.**
888 Prospect Street, Suite 200
San Diego, CA 92037
Tel. 949.636.1391
*Pro Hac Vice* Pending

*Attorneys for Defendant EONSMOKE, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUUL LABS, INC., <br><br> Plaintiff, <br><br> v. <br><br> EONSMOKE, LLC, ZLAB S.A., ZIIP LAB CO., and SHENZHEN YIBO TECHNOLOGY CO., LTD., <br><br> Defendants. | Civil Action No. 19-8405 (JMV) (MF) <br><br> **DEFENDANT EONSMOKE'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

Defendant Eonsmoke, LLC ("Eonsmoke") responds hereby to Plaintiff's Motion

for Preliminary Injunction.[1]  In two recent Orders (*see* D.E. 16, 22), this Court denied

---

[1] Eonsmoke joins and incorporates herein by this reference all of the positions and arguments presented in the submissions of the three ZLab/Ziip/Yibo co-Defendants.

Plaintiff's TRO Application in full, but set for hearing its Motion for Preliminary Injunction on the two issues raised concerning "[design] patent infringement and unfair competition."[2]  D.E. 16 at 1.[3]

### Introduction and Summary of Response

For its design patent claim, Plaintiff asserts—in only a single paragraph of discussion—that "a cursory visual comparison confirms that the overall design of the [Eonsmoke] accused products is substantially the same as the overall design of the D'536 patent."  However, not only does Plaintiff ignore several required steps of the necessary legal analysis for design patent infringement (which alone should compel denying any preliminary injunction), but the proper conclusion from even Plaintiff's "cursory visual comparison" is the opposite.  That is, the easily-identified design differences between the asserted D'536 patent claim and the accused Eonsmoke products demonstrate non-infringement, or at the very least, they demonstrate that any final conclusion of infringement at trial is ***unlikely***.

---

[2] Plaintiff concedes that it "is not pursuing all of the claims in its complaint, but rather just one design patent;" that is, U.S. Patent No. D842,536 ("the D'536 patent").  *See* D.E. 8 at 2, 5.

[3] The Court ordered that "[a]ny party intending to call a witness to testify . . . shall notify the Court . . . ."  *See* D.E. 16 at 2 n.3.  Defendant Eonsmoke may call one or both of its two principals, Greg Grishayev and/or Mike Tolmach.

Moreover, each of Plaintiff's contentions on irreparable harm, balance of equities, and public interest falls well short of the very high burden required for any preliminary injunction. Plaintiff's contentions on these required findings depend not on its design patent claim anyway, but instead on a favorable outcome on the merits of its unfair competition claim—which is even less likely. As such, even a favorable assessment of the design patent claim could not support the required irreparable harm, balance of equities, and public interest. Finally, ***Plaintiff's unexplained delay*** of eight days—from the March 5, 2019 issuance of the D'536 patent to its March 13, 2019 filing of its motion—importantly demonstrates the lack of justification for any preliminary, "emergency" relief.[4]

On the unfair competition claim, there is even more delay (and less urgency). As Plaintiff admits, it was almost ***five months ago*** when, "in November 2018, Juul Labs also ***voluntarily*** restricted sales of ***certain*** flavored JUULPods and stopped distributing them to all of the 90,000+ retail outlets selling Juul Labs products," even though Plaintiff still sells its "Cucumber, Creme, Fruit, and Mango JUULPods [] on its website" and still "distributes to retail outlets [flavors including] Menthol, and Mint." D.E. 8 at 7

---

[4] No explanation for the delay could suffice anyway, because actually Plaintiff knew for 20 days prior that the D'536 patent would issue on March 5, 2019. *See* Ex. A (February 13, 2019 Issue Notification). At the very least, Plaintiff could have filed its motion that same day. Plaintiff not only fails to disclose that it (a) knew the D'536 patent would issue long before it did, and (b) knew the exact date the issuance would occur, but Plaintiff attempts to mislead by stating that "just last week" the patent suddenly materialized. *See* D.E. 8 at 5. In fact, Plaintiff had 20 days before the March 5, 2019 issue date to prepare and file its motion, but Plaintiff decided instead to wait another 8 days.

(emphasis added).  Not only does this long delay preclude any *irreparable* harm and undue hardship (and preclude any preliminary injunction), but Plaintiff's continued sales of "flavored" pods negates any unfair competition by Eonsmoke.  Again in just a single paragraph of its moving brief, Plaintiff argues only that "Defendants are forcing Juul Labs to compete against illegal and unregulated products."  But because Plaintiff continues selling flavored pods, Plaintiff and Defendants are still selling the same *legal* products, and they face the same FDA regulatory scrutiny which, to date, has not made either party's products "illegal."  Therefore, Plaintiff falls well short of the very high standard for a preliminary injunction, and its request for one should be denied.

## Legal Standard

As this Court has cautioned, "Preliminary injunctive relief is an extraordinary remedy, which should be granted only in limited circumstances."  *Cochlear Ltd. v. Oticon Med. AB*, No. 18-6684, 2018 WL 5307822, at *1 (D.N.J. Oct. 26, 2018) (citing *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014)).  The required factors are (1) likelihood of success on the merits, (2) irreparable harm, (3) a favorable balance of equities, and (4) that an injunction is in the public interest.  *See id*. "The failure to establish any of the four elements renders a preliminary injunction inappropriate."  *Id*.  Here, Plaintiff's request is inadequately supported on each of these four required factors.

4

## **Plaintiff Fails to Show Any Likely Design Patent Infringement**

The entirety of Plaintiff's analysis of design patent infringement (*see* D.E. 8 at 14-15) consists only of (a) citation to *Egyptian Goddess* and a few other cases, plus (b) the following single sentence summarizing—admittedly—only a "cursory visual comparison" of the patent drawing and the accused products: "The accused [Eonsmoke] pods are virtually identical to the claimed design, including the overall shape, relative proportions, distinctive transparent chamber on one half, opaque portion on the other, a tube running through the middle of the chamber, and a notch where the two halves meet." *Id.* at 15 (citing Alarcon Decl. ¶¶ 52-70).[5] Not only is Plaintiff's thin infringement analysis flawed in substance, but Plaintiff has ignored several required steps in the required analysis altogether.

As *Egyptian Goddess* holds, there are "a number of other issues that bear on the scope of the claim" of a design patent, to be completed ***before*** engaging in any "cursory visual comparison" as Plaintiff solely addresses.  *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008).  These "other issues" include (a) "assessing and describing the effect of any representations that may have been made in the course of the ***prosecution history***," (b) "distinguishing between those features of the claimed design that are ornamental and ***those that are purely functional***," and (c) assessing "whether an

---

[5] In its reply brief to the TRO request, Plaintiff pretends that Eonsmoke does not specifically deny that "it slavishly copied" from Plaintiff, that "its sales are illegal as its products are non-FDA compliant," and that "it has taken advantage of Juul Lab's voluntary pulling of certain JUULPod flavors."  Indeed, these unsupported propositions are hereby denied—specifically—which should have been clear inherently from Eonsmoke's prior response.  *See* Grishayev Decl. ¶¶ 2-5 (filed herewith).

ordinary observer, *familiar with the prior art* . . . , would be deceived into believing the [accused infringing design] is the same as the patented [design]." *Id.* at 680-81 (emphasis added). Because Plaintiff has not assessed any of these issues in its "cursory" argument, as a procedural matter (including due process) neither Eonsmoke nor this Court could properly assess all of the necessary issues of prosecution history, functionality, prior art, claim scope, alleged infringement, and likelihood of success on the merits. For example, Plaintiff has not discussed the prosecution history, has not discussed the important constraints of the prior art,[6] and has not removed from its analysis the numerous "functional" elements of the claimed design.[7]

Particularly concerning functionality, the Federal Circuit has emphasized repeatedly that "the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997); *see also Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016) ("[T]he scope of a design patent claim must be limited to the ornamental aspects of the design.") (citing *Ethicon Endo-*

---

[6] The D'536 patent alone cites *hundreds* of different prior art references, which must be considered in any infringement analysis. There is even more non-cited prior art, of course, some examples of which Eonsmoke has located in just the short time it had to prepare this response. *See* Ex. B.

[7] Not only has Plaintiff failed to address in its brief all of the required steps in the proper analysis, but the cited Alarcon Declaration fails to cure the deficiencies. *See* D.E. 9 at 21-26. Moreover, as a matter of due process and fairness—especially given the short time frame allowed for this response—Eonsmoke should not be required to scour Plaintiff's many hundreds of pages of declarations and exhibits to respond to points and arguments never mentioned in Plaintiff's brief.

*Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015)).  Indeed, by statute, design patents are limited in scope to "new, original ***and ornamental***" designs for an article of manufacture. 35 U.S.C. § 171(a) (emphasis added).  Here, an understanding of these "pods" or "cartridges" at issue, and how they function, compels the conclusion that nearly all of the features of the asserted design are functional, not ornamental at all.

For example, the overall shape of the cartridge is dictated by the device (including the battery) it must connect to.  The end of the transparent chamber has a tapered end and indents on the side of the chamber so it can connect to protrusions within the device.  Even the edge of the mouthpiece is dictated by the battery it must connect to, because an incompatible edge would prevent it from being usable.  The shape and position of the center tube also is dictated by its function, because it exists to provide a pathway for heated vapor to move from the heating element to the opposing end.  A cylindrical chamber offers the greatest volume-to-surface area ratio, allowing the greatest amount of vapor to pass through while using the least amount of material.

Plaintiff provides no analysis of functionality considerations.  Its singular focus is the shape of the "notch."  *See* D.E. 8 at 15.  But even Plaintiff's own images show clear and important (and non-infringing) distinctions concerning "notch" shape.  For example, whereas the design patent shows a wide, trapezoidal notch shape, the "Eonsmoke" design shows a distinctive, narrow and deep U-shape, while the "4X" design shows a distinctive,

narrow and deep V-shape.[8] *See id*.  Therefore, even the insufficient but quick visual comparison confirms that non-infringement (rather than infringement) is the likely outcome on the merits of Plaintiff's design patent claim.

In its reply on the TRO request, Plaintiff attempted to analyze non-functionality by admitting that "elements of the design almost always have some functionality to them," but claiming a "variety of aesthetic choices that make up the ornamental design [of the D'536 patent], including the length, width, depth, corner shaping, use of largely uniform widths (as opposed to, for example, flaring or more rounded designs), ratios of transparency to device cover, location of the notch, and so forth."  But this vague, one-sentence argument cannot carry Plaintiff's burden on the functionality issue, particularly when Plaintiff improperly ignored this Court's specific request that Plaintiff provide a good faith analysis of its many utility patents which are highly material to the functionality issue.

Moreover, Plaintiff ignores the functional requirements dictating the tapered design of the mating, locking "detents" which must be shaped to fit into a locking relationship with those on the device.  The remaining dimensions of the cartridge are also dictated by the device housing, because if the dimensions do not match, the cartridge itself would be too large to fit within the housing cavity, or too small to remain in place.  Therefore, an attempt to create a cartridge with a different design would necessarily fail

---

[8] Plaintiff proposes that "a quick Internet search shows that there are many other designs available for vaporizer cartridges," but even if true it is irrelevant because these other cartridges are incompatible with the JUUL device.

8

because no alternative cartridge would fit the corresponding cavity in the battery housing.
*See Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed.Cir.1996) (holding
design of key not patentable because dictated by function, *i.e.*, the design of the
corresponding lock).

The prosecution history and prior art also constrain the scope of the asserted
design patent.  Some of the admitted prior art includes US20170302324A1, which
contains a depiction of a rectangular e-cigarette [1000] in Figures 10-14.  *See* Ex. B.  This
depicted e-cigarette contains what appears to be a rectangular cartridge with a
mouthpiece and notch.  Other admitted prior art includes WO2017173951A1, which
includes a rectangular cartridge containing a notch.  *See id*.  With its motion, especially
on a request for such extreme, emergency relief, Plaintiff had the obligation to set forth a
complete analysis of patent claim scope—including functionality and prior art
constraints.  Instead, Plaintiff attempts to place the entire burden on Defendants, which is
not fair or equitable.  This Court should only consider equitable relief to those who
behave equitably, not those who obfuscate, mislead, and foist unfair, unnecessary
surprises on unwitting opponents.

<u>**There Is No Risk of "Irreparable" Harm**</u>

On the required showing of "irreparable harm," Plaintiff contends that "price
erosion, loss of goodwill, damage to reputation, and loss of business opportunities"
would result from the alleged design patent infringement.  *See* D.E. 8 at 20 (admitting
that irreparable harm resulting from patent infringement "requires proof that a causal
nexus relates the alleged harm to the alleged infringement.") (internal citation omitted);

*see Cochlear*, 2018 WL 5307822, at *8 (irreparable harm requires that "a sufficiently strong causal nexus relates the alleged harm to the alleged infringement," and "[m]ere speculation may not suffice") (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012)).  But the only alleged, cognizable design patent infringement relates to the shape of the "notch" in the claimed design, which is so insignificant that it could not cause any harm at all, much less irreparable harm.

Even Plaintiff's assertions of a "superior design" relate to Plaintiff's overall system, not the particular shape of the "notch" in the pod or cartridge.  *See* D.E. 8 at 20 (asserting that its "designs have been consistently praised," users "appreciate the flat rectangular product design [and] discreet size," the device is "beautiful" and "far sleeker and better than [the] average gigantic multi-piece vape," and the system is "beautifully designed" and "definitely unique").  The main product in this system is the vaporizing device itself, which functions only when paired with a replaceable pod.  The shape of the pod's "notch" is irrelevant and immaterial to any market success of the overall system.

In its reply brief on its failed TRO request, Plaintiff cites as irreparable harm several problems having nothing to do with any infringement or unfair acts by Eonsmoke. For example, no ***illegal*** action by Eonsmoke is "undermining Juul Labs' efforts to restrict the sales of certain flavored pods in cooperation with the FDA," or "harming the public's perception of the e-cigarette marketplace," or "harming Juul Labs' brand and reputation," or "harming the public by offering illegal products that have not been approved by the FDA and that are manufactured with uncertain quality controls," or "undercutting Juul

Labs' downstream sales and market share."  Even if these are actual harms, they fall

squarely under the regulatory control of the FDA, not under the control of Eonsmoke.[9]

## The Balance of Equities Favors Denial of Any Injunction

On the equities, Plaintiff asserts that its (assumed) harm "far outweighs any

potential harm to [Eonsmoke]."  *Id.*  But the harm to Eonsmoke is existential, and would

harm many New Jersey residents unfairly.  *See* Grishayev Decl. ¶ 5.  Plaintiff's analysis

of its own claimed harm bears no relation to the claimed "notch" shape of the design

patent.  Rather, Plaintiff cites only to much broader considerations relating to the already-

rejected claim of unfair competition.  *See id.* (citing Plaintiff's time and monetary

investments, "the quality of its products" and "creat[ing] a sustainable market for e-

cigarettes," without mention of any significance of the claimed trapezoidal notch design).

Therefore, notwithstanding demonstrable non-infringement, Plaintiff's hyperbole about

"free-riding on [Plaintiff's] efforts and goodwill" is inapposite as proof of the equities

vis-à-vis the particular, narrowly-focused design patent infringement claim.[10]

---

[9] Plaintiff admits that the FDA has a "swiftly changing regulatory landscape" in this industry, which justifies even more caution against any "ham-handed" preliminary injunction against Eonsmoke and its present, ***legal*** sales of unique, compatible pods.

[10] Plaintiff's counsel should know better than to put forth the oft-cited quote from the *Windsurfing International* case from 1986, which was made in the context of a ***permanent***—not preliminary—injunction.  The distinction is important, because at the permanent injunction stage, infringement already has been proven.  *See Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 684 (Fed. Cir. 1990) ("The quote is surprising, for the injunction under consideration in *Windsurfing* was a ***permanent*** injunction, to be issued ***after trial***.  Thus, nothing in *Windsurfing* is remotely related to a potential destruction of Grip-Pak ***without*** its day in court.") (emphasis in original).  The poignant harm to Eonsmoke of a TRO or ***preliminary*** injunction would be existential, which certainly outweighs the non-monetary harm to Plaintiff, if any.  *See* Grishayev Decl. ¶ 5.

## The Public Has No Interest In An Incorrect Injunction

The public has a preeminent interest in having this Court make a proper assessment of the scope of Plaintiff's design patent, its infringement claim, and any irreparable harm.  Plaintiff's cited "public interest"—"protect[ing] minors from . . . dangerous products," "reducing underage use of tobacco and e-cigarette products," and "protecting access by adult smokers to regulated and high quality alternatives to combustible cigarettes"—are irrelevant because they bear no nexus to the scope of the asserted design patent, nor to the asserted unfair competition because Plaintiff still sells its *legal*, flavored pods far and wide.

## Plaintiff Fails to Show Any Likely Success on Unfair Competition

This Court already denied Plaintiff's TRO request because of many shortcomings (including an inadequate analysis) in its moving brief.  Plaintiff's supplemental briefing should fare no better.  First, Plaintiff again pretends (incorrectly) to speak for the FDA in claiming that Defendants "are selling illegal products" which "leaves no time for Juul Labs to wait for FDA regulators to shut down or impose fines on Defendants."  But the Plaintiff is not the FDA, and moreover it cites no case where a court enjoined a *legal* product the FDA had never determined to regulate.[11]

---

[11] Plaintiff contends "Eonsmoke implicitly admits that its products are not FDA-compliant."  Not true.  Instead, just like Plaintiff, Eonsmoke is now in the process of working closely with the FDA to ensure compliance.

## <u>Conclusion</u>

For each of the foregoing reasons, Defendant Eonsmoke respectfully requests a prompt denial of Plaintiff's motion.[12]

Respectfully submitted,

LAW OFFICES OF MARK A. KRIEGEL, LLC

/s/ Mark A. Kriegel
1479 Pennington Road
Ewing, NJ 08618
Tel: 609.883.5133
Email: mkriegel@kriegellaw.com

SML AVVOCATI P.C.

/s/ Stephen M. Lobbin
888 Prospect Street Suite 200
San Diego, CA 92037
Tel. 949.636.1391
Email: sml@smlavvocati.com
*Pro Hac Vice Pending*

*Attorneys for Defendant EONSMOKE, LLC*

Dated:  March 25, 2019

---

[12] If any injunction issues, it should come with a very significant bond amount.  Plaintiff ignored this Court's request to set forth a position on a bond amount, and Eonsmoke reserves its right to set forth its own position.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 25, 2019, I electronically filed the above document(s) with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.

<u>/s/ Mark A. Kriegel</u>